**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

CHRISTOPHER J. TIGANI, SR.,    )
Trustee and Individually,       )
                                  )
          Plaintiff,        )
                                  )   N18C-12-241 EMD
C.I.P. MANAGEMENT, LLC, a    )
Delaware Limited Liability Company, )
                                  )
         Defendant.      )
                                  )

**MEMORANDUM ORDER GRANTING MOTION TO DISMISS**

This is a civil action arising from a commercial lease agreement (the "Lease Agreement") between Defendant C.I.P. Associates, LLC ("CIP"),[1] acting as a landlord, and tenant World Class Wholesale, LLC ("WCW") for property located at 230 Cornell Drive, Suite C1, Wilmington, DE (the "Property"). Plaintiff Christopher J. Tigani, Sr. is the manager of WCW and entered into a surety agreement (the "Surety Agreement") with CIP in which Mr. Tigani promised to perform the obligations of WCW in the Lease Agreement. WCW was evicted from the Property for overdue rent.

On December 18, 2018, Mr. Tigani filed a complaint (the "Complaint") against CIP alleging (i) conversion and (ii) replevin of his personal property from the Property. Mr. Tigani is representing himself *pro se.* CIP filed Defendant's Motion to Dismiss (the "Motion") on January 24, 2019. Mr. Tigani filed a response to the Motion ("Response") on February 26, 2019. After a hearing, the Court asked for some additional briefing. Mr. Tigani filed a supplemental brief on April 22, 2019. CIP responded to that filing on April 25, 2019. On April 26, 2019, Mr. Tigani

---

[1] The Complaint's caption states that the parties are Plaintiff Christopher J. Tigani, Sr. and Defendant C.I.P. Management, LLC. The first paragraph of the Complaint, however, alleges that C.I.P. Associates, LLC is the Defendant. Compl. at ¶ 1. The Court assumes the caption is in error as C.I.P. Associates, LLC is the party to both the Lease Agreement and the Surety Agreement, and the parties address CIP as C.I.P. Associates, LLC.

submitted a letter responding to CIP's April 25 filing.  Thereafter, on April 28, 2019, CIP found it necessary to respond to Mr. Tigani's April 26 letter.

For the reasons set forth below, the Court will **GRANT** the Motion.

## I. BACKGROUND

### THE LEASE AGREEMENT

The relationship between the parties is one involving a commercial rental space—the Property.  The Lease Agreement is dated November 14, 2017.  The parties to the Lease Agreement are C.I.P. and WCW.  The Surety Agreement is separate agreement that was entered into at the same time as the Lease Agreement.  The parties to the Surety Agreement are Mr. Tigani and CIP.

Section 12.1 of the Lease Agreement addresses a default by the tenant,

> Tenant will be in default of this Lease if any payment is received after it is due. Tenant will be in default if Tenant fails to observe or perform any non-monetary agreement or obligation herein if Tenant fails to begin and diligently pursue curing the same within ten (10) days of Landlord giving notice of the violation.

Section 12.1 continues that the "Landlord shall have all rights and remedies available to Landlord provided by law or equity even if not expressly set forth in this Lease." Section 10 of the Lease Agreement discusses abandonment of the tenant's personal property,

> Landlord may, but need not, deem abandoned any personal property (including but not limited to fixtures, trade fixtures, supplies and equipment) remaining in the Leased Premises at the expiration or earlier termination of this Lease and Landlord may without notice remove and dispose of the same in any manner Landlord desires and may repair and restore any damage caused thereby, all at Tenant's sole cost and without liability to Tenant.

The Lease Agreement specifies that Section 10 survives the termination of the Lease. Section 28 of the Lease Agreement regarding notices states,

> **LANDLORD MAY SEND NOTICES OF TENANT DEFAULT SOLELY TO THE LEASE PREMISES VIA ORDINARY US EMAIL OR VIA PERSONAL**

2

**DELIVERY TO THE LEASED PREMISES. A NOTICE WILL BE DEEMED GIVEN ON THE DATE IT WAS RECEIVED BY THE ADDRESSEE AS EVIDENCED BY PERSONAL DELIVERY TO THE LEASED PREMISES (OR POSTING THERON), RETURN RECEIPT, OR IF A REQUESTED RETURNED IS NOT SIGNED, NOTICE WILL BE DEEMED GIVEN TWO DAYS AFTER MAILING OF THE NOTICE.**

Finally, Section 31 of the Lease Agreement states that the parties waive their rights to a trial by jury. Despite this, Mr. Tigani has requested a jury trial in this case.

In the Surety Agreement dated November 14, 2017, Mr. Tigani agreed to become a surety for the obligations of WCW under the Lease Agreement. In Section 4 of the Surety Agreement, the parties agreed to

> THE SURETY [MR. TIGANI] HEREBY IRREVOCABLY WAIVES AND RELEASES ANY AND ALL RIGHTS IT MAY HAVE AT ANY TIME (WHETHER ARISING DIRECTLY OR INDIRECTLY, BY OPERATION OF LAW, CONTRACT OR OTHERWISE): (A) TO ASSERT ANY CLAIM AGAINST TENANT OR ANY OTHER PERSON, OR AGAINST ANY DIRECT OR INDIRECT SECURITY, ON ACCOUNT OF PAYMENTS MADE OR OBLIGATIONS PERFORMED UNDER OR PURSUANT TO THIS AGREEMENT, INCLUDING WITHOUT LIMITATION ANY AND ALL RIGHTS OF SUBROGATION, REIMBURSEMENT, EXONERATION, CONTRIBUTION OR INDEMNITY . . . .

**THE JP COURT ACTION**[2]

On March 29, 2018, CIP filed a complaint, under 25 *Del. C.* § 5704, in the Justice of the Peace Court of the State of Delaware in and for New Castle County, Court No. 13 (the "JP Court"). The case named WCW and Mr. Tigani as defendants and was captioned *CIP Associates, LLC v. World Class Wholesale, LLC and Christopher Tigani (Surety)*, JP13-18-004018 (the "JP Court Action"). Through the suit, CIP sought possession of the Property and overdue rent.

---

[2] These facts are from the Motion. Mr. Tigani has listed different dates for the operative actions in the Complaint. But, Mr. Tigani's dates do not match the dates of the notices on the exhibits.

3

On May 8, 2018, the JP Court held a hearing on CIP's complaint. WCW and Mr. Tigani failed to appear at a hearing for the case. As such, CIP asked for a default judgment in the amount of $15, 041.50.

On July 9, 2018, the Justice of the Peace Court issued a notice and order of default judgment (the "Notice"). The Notice was mailed to WCW and Mr. Tigani. A Justice of the Peace signed the Notice. The Notice states that judgment has been entered "[b]ecause [WCW and Mr. Tigani], after receiving proper service of process, have failed to timely file an answer or appear for a scheduled trial…."

WCW and/or Mr. Tigani failed to (i) appeal the default judgment, or (ii) to move to vacate the debt by July 19, 2018. In addition, Mr. Tigani and/or WCW did not seek any remedy under 25 *Del. C.* § 5711(b). As stated in the Notice, CIP had "30 days from this signed Order to file a Writ of Possession."

On July 26, 2018, CIP requested, under 25 *Del. C.* § 5715, the issuance of a Writ of Possession (the "Writ Request"). CIP sent notice of the Writ Request to WCW and Mr. Tigani. On August 1, 2018, the JP Court entered a notice and order of eviction (the "Eviction Notice"). The Constable posted the Eviction Notice on the Property on August 2, 2018. WCW and/or Mr. Tigani did not respond to the Writ Request or the Eviction Notice.

Then, on August 3, 2018, CIP gained possession of the Property, and completed WCW's eviction by August 6, 2018.

WCW and/or Mr. Tigani did not seek to say the JP Court action under 25 *Del. C.* § 5716. In addition, neither WCW nor Mr. Tigani sought to stay the JP Court action under 25 *Del. C.* § 5717. No appeal has ever been filed with respect to the JP Court's judgment in the JP Court Action.

On August 8, 2018, CIP sent a letter (the "Notice of Disposal Letter") to WCW care of Mr. Tigani. The Notice of Disposal Letter provides a history of the JP Court Action. In addition, CIP notes that it has "discovered numerous items of Tenant's personal property remained in the Premises (collectively, the "Property"). CIP expressly provides:

> Notice is hereby given that unless you make immediate arrangements with the Landlord for removal of the Property at your cost, including but not limited to payment of the sum of Four Hundred and Twenty-Four and 26/100 Dollars ($424.26) as and for Landlord's cost of storing the Property during the period of August 3, 2018 through August 10, 2018, Landlord intends to dispose of all such personal property as it deems necessary or desirable. If you intend to remove the Property, you must contact the property manager….

CIP sent the Notice of Disposal Letter by certified mail, return receipt requested to 1140 Presidential Drive, Greenville, DE 19807. The U.S. Postal Service attempted to deliver the Notice of Disposal Letter on August 10, 2018, August 16, 2018 and August 25, 2018. The U.S. Postal Service returned the Notice of Disposal Letter to CIP as unclaimed.

CIP disposed of personal property at the Property on August 13, 2018.

### THE COMPLAINT

The Complaint sets out a different scenario than that contained on the JP Court's docket. Mr. Tigani spends time and allegations discussing a family dispute that does not seem overly relevant to the relationship by and among CIP, WCW and Mr. Tigani.[3] In addition, Mr. Tigani goes into detail regarding his personal rental unit at Greenville Place and pre- paying rent on that unit.[4]

In support of his claims for conversion and replevin, Mr. Tigani provides a number of allegations regarding whether his conduct evidenced intent to abandon property at the Property. Mr. Tigani alleges his conduct towards the Greenville Place unit demonstrates he did not intend

---

[3] *See, e.g.*, Compl. at ¶¶ 7-9 and 14-15.
[4] *See, e.g.*, Compl. at ¶¶ 25-26.

to abandon property at the Property.[5]  Moreover, Mr. Tigani sets out a number of communications beginning in September and running through December 2018 that he contends that he did not intend to abandon the property.

Between August 31, 2018 and December 2018, Mr. Tigani emailed Pettinaro Management, LLC ("Pettinaro"), an agent of CIP, noting that he could pay a portion of his debt and would like to have access to his personal property.  Pettinaro noted that it had stored a box of pictures, etc. from the Property, but had disposed of the rest of the property.

## II. PARTIES' CONTENTIONS

### A.  CIP'S CONTENTIONS

CIP argues that the Court should dismiss this action because Mr. Tigani cannot assert, under any reasonably conceivable set of circumstances, viable claims for conversion or replevin. CIP contends that the eviction proceedings terminated Mr. Tigani's rights to the possession of the Property or the value of the Property.   C.I.P. argues that Mr. Tigani lacks standing to bring the Complaint. CIP cites 6 *Del. C.* § 18-107, which states that a member or manager of an LLC may act as a surety for an obligation of the LLC.[6]  CIP claims that Mr. Tigani is familiar with the Delaware Landlord-Tenant Code because WCW was evicted by another landlord.  CIP finally contends that emails between Mr. Tigani and CIP in which Mr. Tigani asks for an extension to repay his debts and to retrieve his personal property after his eviction are (i) inadmissible evidence because these email exchanges are settlement negotiations and (ii) invitations to negotiate, which do not create a contract.

---

[5] Compl. at ¶ 26.

[6] 6 *Del. C.* § 18-107 ("Except as provided in a limited liability company agreement, a member or manager may lend money to, borrow money from, act as a surety, guarantor or endorser for, guarantee or assume 1 or more obligations of, provide collateral for, and transact other business with, a limited liability company and, subject to other applicable law, has the same rights and obligations with respect to any such matter as a person who is not a member or manager.")

6

## B. MR. TIGANI'S CONTENTIONS

In response, Mr. Tigani argues that CIP engaged in conversion of his personal property because Mr. Tigani did not intend to abandon his property. Second, Mr. Tigani argues that the Court should determine CIP's state of mind before dismissing the claim. Third, Mr. Tigani argues that he did not receive the notices that were mailed to his home and so CIP did not comply with the Lease Agreement or the law. Fourth, Mr. Tigani argues that CIP cannot disclaim liability for its gross negligence or willful misconduct under the terms of the Lease Agreement. Finally, Mr. Tigani argues that he is entitled to punitive damages because CIP acted with ill will or intent to cause injury.

## III. STANDARD OF REVIEW

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[7] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[8]

## IV. DISCUSSION

### A. THE COMPLIANT FAILS TO STATE A CLAIM FOR CONVERSION

The Complaint asserts a claim for conversion. Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it."[9] One's obligation to refrain from conversion, or wrongfully misappropriating another's

---

[7] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[8] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[9] *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 889 (Del. Ch.2009).

7

property, arises from general tort law and "exists independent of any contractual relationship between the parties."[10]  The Court finds that the dispute between CIP and Mr. Tigani is one governed by statute and not by the common law claim of conversion.

The Residential Landlord-Tenant Code (the "Code") set out in Part III of Title 25 does not apply to commercial rental party agreements.[11]  Instead, the rights, remedies and obligations of the parties to a commercial rental agreement are govern by the agreement and general contract principles.[12]  The only part of the Code that applies to commercial rental agreements is Chapter 57 of Title 25.[13]

The Lease Agreement is a commercial rental agreement.  As such, only Chapter 57 of the Code can possibly apply to the dispute between CIP and Mr. Tigani.  The Court, therefore, is not addressing any arguments of the parties that relies upon the Code as the Code relates to other forms of rental agreements.

Under the Code, landlords cannot use the remedy of self-help.[14]  Instead, a summary proceeding through the JP Court is the appropriate remedy for landlords in situations where a landlord is owed rent,[15] including where a tenant has abandoned the property with back rent due,[16] or where a tenant "unlawfully continues in possession of any part of the premises after the expiration of the rental agreement without the permission of the landlord."[17]  So, landlords cannot "unilaterally declare a lease default and terminate lease rights without a magistrate's

---

[10] *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *4 (Del. Super. July 25, 2007).
[11] 25 *Del. C.* §5101(b).
[12] *Id.*
[13] *Id.*
[14] *See Carriage Realty Pship v. All–Tech Auto., Inc.,* 2001 WL 1526301, at *8 (Del. Ch. Nov. 27, 2001).
[15] *See Drylie v. Woods,* 1991 WL 53434, at *2 (Del. Super. Mar. 18, 1991).
[16] *Id.*
[17] 25 *Del. C.* § 5702(a).

order. Unless and until a landlord institutes such a proceeding and wins, and the tenant fails to cure the default, the lease remains valid."[18]

Once a landlord obtains a final judgment, the JP Court issues a writ of possession and a warrant directed to the constable, which describes the property and commands the officer to put the landlord into full possession of the property.[19] If a tenant fails to remove his personal property from the premises once the writ of possession is executed, the landlord can immediately remove the property and store it for seven days at the tenant's expense.[20] If the tenant fails to claim his property after the seven day period, the property will be *deemed abandoned* and the landlord can dispose of it with or without further notice to the tenant.[21]

### 1. CIP lawfully terminated its lease with Mr. Tigani

Neither party disputes that WCW owed rent to CIP since the beginning of 2018, although the exact amount of overdue rent is not clear from the Complaint or the Motion.[22] WCW was in default under the Lease Agreement because, as of the date of the Complaint, WCW still had not

---

[18] *Carriage Realty Pship v. All–Tech Auto., Inc.,* 2001 WL 1526301, at *8 (Del. Ch. Nov. 27, 2001).
[19] 25 *Del. C.* § 5715(a).
[20] 25 *Del. C.* § 5715(e) ("If, at the time of the execution of the writ of possession, the tenant fails to remove tenant's property, the landlord shall have the right to and may immediately remove and store such property for a period of 7 days, at tenant's expense, unless the property is a manufactured home and the rental agreement is subject to Chapter 70 of this title, in which case the manufactured home must be stored for a period of 30 days. If, at the end of such period, the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property and possessions shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant. Nothing in this subsection shall be construed to prevent the landlord from suing for both rent and possession at the same hearing.
   (1) If there is no appeal from the judgment of summary possession at the time of the execution of the writ of possession and the tenant has failed to remove tenant's property, then the landlord may immediately remove and store such property for a period of 7 days, at tenant's expense, unless the property is a manufactured home and the rental agreement is subject to Chapter 70 of this title, in which case the manufactured home must be stored for a period of 30 days.
   (2) If, at the end of such period, the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property and possessions shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant.").
[21] *Id.*
[22] The JP Court entered a judgment WCW and Mr. Tigani in the amount of $15,041.50.

9

paid the overdue rent in full.  Mr. Tigani was the surety with respect to WCW and the Lease Agreement.

CIP followed the remedies set out in Chapter 57 of the Code.  First, CIP filed a complaint in the JP Court under 25 *Del. C.* § 5707.  CIP lawfully terminated the lease because CIP followed the procedures in 25 *Del. C.* § 5715.  CIP obtained a judgment, notice was given and, eventually, the JP Court issued a writ of possession and eviction notice.  None of the findings of the JP Court were appealed or otherwise contested in the JP Court Action.

### 2. *CIP's actions did not amount to conversion because CIP had the authority to possess Mr. Tigani's property*

Mr. Tigani correctly cites *Bank of Delaware v. Claymont Fire Co. No. 1*,[23] in which the Delaware Supreme Court ruled, "it is clear that under Delaware law a lessor must establish the lessee's intent to abandon the leasehold property *and* an act on the part of the lessee evidencing such intent in order to establish abandonment."  In that case, the plaintiffs argued that a defendant fire department had abandoned a fire station because the defendants had not used the fire station for nearly one month.  Mr. Tigani contends that he did not intend to abandon his personal property in this case so he can sustain a claim for conversion.  However, in *Bank of Delaware*, no relevant agreement or statute addressed the issue of abandonment of property. case.

Here, Mr. Tigani abandoned his personal property because he did not retrieve the personal property within seven days of the writ of possession as he need to under 25 *Del. C.* § 5715(e).  The reviewable record is clear that the CIP obtained a writ of possession and an eviction notice.  Moreover, CIP provided Mr. Tigani with notice that it was holding personalty

---

[23] 528 A.2d 1196, 1198 (Del. 1987).

removed from the Property. Section 5715(e) of Title 25 provides that any personal property of WCW (here Mr. Tigani's property) was "deemed abandoned and may be disposed of by [CIP] *without further notice or obligation* to [WCW]."[24]  Mr. Tigani cannot sustain a claim for conversion because he did not own the property at the time CIP disposed of it.[25]

Mr. Tigani's *ad hoc* assertion that he did not intend to abandon his property is not sufficient to support a claim for conversion. The *Bank of Delaware v. Claymont Fire Co. No. 1* case is not applicable here because 25 *Del. C.* § 5715(e) controls. This statute clearly states "[i]f, at the end of [seven-day period from the date of the issuance of the writ of possession], the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property and possessions shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant."[26]

### 3. Mr. Tigani is not entitled to punitive damages

"Generally, the measure of damages for conversion is the value of the property at the time of the conversion with interest."[27]  Punitive damages are intended to punish tortfeasors whose conduct was willful or wanton and to prevent others from engaging in similar conduct in the future.[28]  Specifically, punitive damages may be awarded when a defendant's conduct is "outrageous" or involves "evil motive" or "reckless indifference to the rights of others."[29]  With respect to conversion, punitive damages may be awarded where the conversion involves "ill will, malice, recklessness, wantonness, oppression, insult, willful or conscious disregard of the

---

[24] 25 *Del. C.* § 5715(e)(emphasis added).
[25] *See Affordable Autos, Inc. v. Dietert,* 2016 WL 1169244, at *5 (Del. Super. Ct. Mar. 24, 2016).
[26] 25 *Del. C.* § 5715(e)(emphasis added).
[27] *Id.*
[28] *Id.*
[29] *Id.*

plaintiff's rights, or other aggravating circumstances," including when a defendant consciously disregards a foreseeable result.[30]

Here, the Court holds that, because Mr. Tigani cannot sustain a claim for conversion, Mr. Tigani is not entitled to punitive damages.

### B. THE COMPLIANT FAILS TO STATE A CLAIM FOR REPLEVIN

"[R]eplevin is primarily a form of action for the recovery of the possession of personal property which has been taken or withheld from the owner unlawfully.[31] "The right of [plaintiffs] to maintain their action, therefore, depend[s] upon whether they had title to, and the right of immediate possession of, the property which was the subject of the suit."[32]

Here, Mr. Tigani did not have a right to possess his personal property because, under 25 *Del. C.* § 5715(e), Mr. Tigani had been deemed to have abandoned his personal property. So, Mr. Tigani cannot support a claim for replevin.

### V. CONCLUSION

The Court is dismissing the Complaint here as the Complaint fails to assert viable claims for Conversion or Replevin. Moreover, the Complaint seems to be a collateral attack on specific findings and holdings of the JP Court. The Code sets up a process for disputes between

---

[30] *Id.*
[31] *Harlan & Hollingsworth Corp. v. McBride,* 45 Del. 85, 90, 69 A.2d 9, 11 (1949).
[32] *Id.*

12

landlords and tenants, including the prevention of self-help and alike. CIP availed itself of this process. Mr. Tigani and WCW chose not to participate in that process or appeal the findings of the JP Court. Accordingly, the Court shall **GRANT** the Motion.

July 24, 2019
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:     FileAndServeXpress
        Christopher J. Tigani, Sr.